**Colleen ROSENBERG, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PIKE COUNTY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 2007.

Decided Feb. 5, 2008.

Jenifer Dana Kaufman, Philadelphia, for petitioner.

Cal A. Leventhal, Honesdale, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, SMITH-RIBNER, PELLEGRINI, FRIEDMAN, SIMPSON and LEAVITT, Judges.

OPINION BY Judge SIMPSON.

This appeal from the modification of workers' compensation benefits again raises the question of an employer's responsibility to prove whether or not it has a position available to a partially disabled claimant. We determine that the factfinder failed to address a crucial conflict in

determination whether such notice satisfies the Law's service requirements.

evidence on this issue. Accordingly, we vacate and remand.

Colleen Rosenberg (Claimant) was employed by Pike County (Employer) as a corrections officer when, in January 2002, she suffered an injury to her right knee from which she has not recovered. However, she returned to light duty work with Employer for about 10 months in a clerical position with the Board of Elections.

In December, 2002, the County Commissioners sent a letter to Claimant terminating her clerical employment with the Board of Elections. The letter stated in part:

> It has come to the Commissioners' attention that the functional capacity evaluation performed on you indicates that there is no reasonable prospect that you can return to full time duty at the Pike County Correctional Facility, and since the County has no provision for a permanent light duty position, the Commissioners find it necessary to terminate your light duty employment effective January 17, 2003.

Certified Record, Dep. of Charles Grande, 10/15/03, at Ex. 1. According to Claimant, and significant to our disposition, she was replaced in the Board of Elections clerical position by a newly-hired person. Reproduced Record (R.R.) at 52a–53a, 65a, 68a.

After the Board of Elections clerical employment ended, Claimant looked for work elsewhere. She found part-time work with varied hours as a dispatcher between January and March, 2004. R.R. at 71a–76a. She also found employment as a bank teller working 24 hours over four days a week beginning in March, 2004. R.R. at 77a–79a.

Regarding Claimant's medical condition, arthroscopic surgery was performed in June, 2002. In 2002 and 2003, Claimant was evaluated by an orthopedic surgeon on behalf of Employer. He opined that she was capable of work in a light duty to medium duty capacity. He also concluded that Claimant could not return to her original corrections officer position. These opinions are not challenged. Claimant received a notice of ability to return to work in November, 2002.

As a result of the orthopedic evaluation, Charles Grande, a certified rehabilitation counselor (Rehabilitation Counselor), evaluated Claimant on behalf of Employer. He met with Claimant, took a vocational background of her, and conducted a labor market survey.

In July, 2003, Employer filed a petition for modification as of March, 2003, based on the results of Rehabilitation Counselor's labor market survey. Hearings before a Workers' Compensation Judge (WCJ) followed.

At the hearings, Employer presented deposition testimony from its orthopedic surgeon and from Rehabilitation Counselor. Thereafter, Claimant testified, but she did not present other witnesses. The WCJ accepted the testimony of Employer's witnesses and partially accepted Claimant's testimony. In particular, the WCJ found that there were three positions available to Claimant which she was capable of performing, and he imputed the income of one of the jobs to her, resulting in a reduced compensation rate.[1] In sum, the WCJ granted the modification petition.

Claimant appealed, raising various issues, including the failure of the WCJ to make a finding regarding available employment with Employer. Noting that Rehabilitation Counselor's accepted testimony included his acknowledgment that he was not aware whether additional light

1. The compensation rates are not at issue.

duty employment with Employer was available, the Workers' Compensation Appeal Board (Board) vacated and remanded. Bd. Op., 9/7/05, at 3–4; R.R. at 99a–100a. The Board directed that additional findings and conclusions be made as to whether Employer met its burden under Section 306(b)(2) of the Pennsylvania Workers' Compensation Act (Act), 77 P.S. § 512(2).[2] *Id.*

On remand to the same WCJ, no further hearings were held. The WCJ entered a new decision that contained an extensive finding responsive to the Board's instructions.[3] Essentially, the WCJ relied on an

2. Act of June 2, 1915, P.L. 736, *as amended.* Section 306(b)(2) provides, with emphasis added:

'Earning power' shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth.... *If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe.* In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation.

3. Finding of Fact No. 10 of the WCJ Decision of April 13, 2006, states:

With respect to the precise issue on the remand from the [Board], this Judge notes that [C]laimant averred before the [Board] that [Employer] with respect to the within modification petition failed to produce evidence that it had no position to offer [C]laimant prior to relying on a labor market survey in support of its petition. Herein, in considering that issue, the Notice of Ability to Return to Work upon which [E]mployer relies herein is dated November 22, 2002. (See [E]mployer exhibit # 4) The *within Modification Petition,* filed July 16, 2003, requested a modification of [C]laimant's benefits as of March 11, 2003, [E]mployer alleging [C]laimant is able to return to available gainful employment as of said date.

[Rehabilitation Counselor] testified specifically relevant to [C]laimant's employment with [Employer] herein. It was his understanding that for approximately ten (10) months, [C]laimant worked in a clerical position, light duty for [Employer] which came to an end in January 2003. (Notes of testimony, Charles Grande, pages 11–12) Moreover, [Rehabilitation Counselor] identified during his testimony herein a December 3, 2002 correspondence from [Employer] to [C]laimant wherein it indicates as follows:

"It has come to the Commissioners [sic] attention that the functional capacity evaluation performed on you indicates that there is no reasonable prospect that you can return to full time duty at the Pike County Correctional Facility, and *since the County has no provision for a permanent light duty position, the Commissioners find it necessary to terminate your light duty employment effective January 17, 2003.*["] (See Charles Grande testimony, pages 12–13)(Emphasis added)

Claimant maintains herein that Section 123.301 of the Regulations of the Act requires an employer seeking a modification of benefits through a labor market survey to establish that it had no work in claimant's usual employment area at the time of the labor market survey. Relying upon testimony from [Employer's] vocational witness, [Rehabilitation Counselor], who acknowledged having no contact with [Employer] regarding employment opportunities for [C]laimant, [C]laimant posits that [Employer] herein thus failed to present any evidence that it had no employment opportunities within [C]laimant's physical restriction and area of employment and therefore the within Modification Petition *must fail as a matter of law.* This Judge disagrees given the record evidence.

In addressing the issue herein and the arguments of both parties, a review of Section

123.301 of the Regulations is necessary. Section (b) therein provides as follows:

"The employer's obligation to offer a specific job vacancy to the employee commences when the insurer provides the notice to the employee required by section 306(b)(3) of the act (77 P.S. section 512(b)(3)) and shall continue for thirty (30) days or until the filing of a petition for modification or suspension, whichever is longer. When an insurer files a petition for modification or suspension which is not based upon a change in medical condition, the employer's obligation to offer a specific job vacancy commences at least thirty (30) days prior to the filing of the petition."

Here, pursuant to Section 306(b)(3) of the Act, when [Employer] received medical evidence that [C]laimant was capable of returning to work, written notice on the actual form prescribed by the Department, Notice of Ability to Return to Work, was sent by regular mail on November 22, 2002 with enclosure to [C]laimant. Thus, [E]mployer's obligation to offer a specific job vacancy continued thereafter for thirty (30) days or until the filing of the Modification Petition herein, whichever is longer. Inasmuch as the Modification Petition was filed on July 16, 2003, the relevant dates clearly pursuant to the Regulations and the Act is [sic] November 22, 2002 through July 16, 2003.

Herein, the record evidence clearly indicated as [C]laimant herself acknowledged, that [C]laimant was working for [Employer] in a light duty capacity at all relevant times through January 17, 2003.

[Employer] relies upon the Commonwealth Court case of *Burrell v. WCAB (Philadelphia Gas Works)*, 849 A.2d 1282 (Pennsylvania Commonwealth Court 2004) Therein, the employer sought a modification of the workers' compensation benefits and the workers' compensation judge granted the same. Appeals followed and the claimant assigned error to the judge modifying benefits because the employer failed, inter alia, to prove that it had no position available within claimant's limitations pursuant to Section 306(b)(2), P.S. Section 512(2). In addressing the same, the Commonwealth Court specifically noted in considering [the] claimant's argument, the following:

"Neither the expressed language or Section 306(b)(2) nor the cases decided under it require proof of the absence of specific jobs with employer as a prerequi-

site to expert testimony of earning power. While the Statute requires an employer to offer an available position if one exists, it does not require employer to prove the nonexistence of such a position. Nor does the Statute preclude a claimant from proving the existence of such a position as a defense to modification." See *Burrell v. WCAB (Philadelphia Gas Works)*, 849 A.2d at 1287.

Granted, [C]laimant did offer testimony herein relevant to a van position with [E]mployer that was open and for which [C]laimant made application. Nevertheless, this Judge notes that the same was on November 19, 2003, well beyond the time frame outlined with Section 123.301 of the Regulations regarding [E]mployer's obligation herein, the relevant time period again being as noted above, November 22, 2002 through the filing of the Modification Petition on July 16, 2003.

While [C]laimant's arguments recite the applicable sections within the Act and Regulations, given the relevant facts herein [Employer's] Modification Petition should not fail. During the relevant time period involved between November 22, 2002 and July 16, 2003, [C]laimant was working in a light duty capacity through January 17, 2003. In fact, [C]laimant had been working for some ten (10) months prior thereto in a light duty capacity with [E]mployer and was advised that [E]mployer did not have permanent light duty positions beyond January 17, 2003. This is all considered together with the fact that any testimony regarding potential or available jobs with [E]mployer after July 16, 2003 is irrelevant to the present proceedings.

Borrowing the language from the Commonwealth Court in *Burrell*, this Judge agrees with the position postured by [Employer] herein that Section 306(b)(2) nor any of these cases decided under it require proof of the absence of specific jobs with employer as a prerequisite to expert testimony of earning power. Claimant clearly had knowledge as of January 17, 2003 that her light duty position was being eliminated, that there was in fact no light duty position available to her anymore, [C]laimant being provided notice of the same by correspondence of December 3, 2002. As *Burrell* clearly found, while the Statute requires an employer to offer an available position if one exists, it does not require employer to prove the non-existence of such a position.

exhibit which was introduced during Rehabilitation Counselor's deposition testimony. The exhibit was the termination letter sent to Claimant and quoted earlier in this opinion.

The WCJ relied upon *Burrell v. Workers' Compensation Appeal Board (Philadelphia Gas Works & Compservices, Inc.)*, 849 A.2d 1282 (Pa.Cmwlth.2004), for the proposition that an employer need not prove the absence of specific jobs with an employer as a prerequisite to expert testimony of earning power. Based on the Claimant's 10–month light duty clerical position at the Board of Elections and language in the termination letter that "[Employer] has no provision for a permanent light duty position," Dep. of Charles Grande at Ex. 1, the WCJ determined Employer could prove its case by expert testimony of earning power. Accordingly, the WCJ again granted modification.

On Claimant's appeal, the Board affirmed. It agreed with the application of *Burrell*. Also, it determined the finding that Employer did not have permanent light duty positions available to Claimant

was supported in the record by the termination letter.

Claimant appeals to this Court, and she advances two assignments of error.[4] First, she contends the compensation authorities committed an error of law in concluding Employer was not required to prove it had no positions available within Claimant's abilities during the relevant period. Second, she argues that the termination letter, upon which the fact-finder relied in finding no permanent light duty positions available, was incompetent hearsay. Consequently, Claimant contends Employer could not prevail in a modification petition under Section 306(b)(2) of the Act.

As to the first issue, Claimant briefly argues that reliance on *Burrell* is misplaced. She contends that case was limited to its facts, which involved a modification based on surveillance and not, as here, on medical testimony and a labor market survey. Rather, this case is controlled by *South Hills Health System v. Workers' Compensation Appeal Board (Kiefer)*, 806 A.2d 962 (Pa.Cmwlth.2002), which holds that Section 306(b)(2) of the Act and Section 123.301 of the regulations[5] require an

---

The same is the case at hand. Nonetheless, it clearly can be stated that [C]laimant was fully aware with the December 3, 2002 correspondence provided to her by [Employer] that there was no light duty employment available for her effective January 17, 2003. To find otherwise herein as [C]laimant argues would be to allow such a strict scrutiny of the Act and the Regulations as never intended when the same were enacted nor allowed by the Commonwealth Court as *Burrell* clearly holds.
R.R. at 107a–09a.

4. This Court's review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25 (Pa.Cmwlth.2005). Substantial evidence is such relevant evidence

a reasonable person might find sufficient to support the WCJ's findings. *Id.*

5. 34 Pa.Code § 123.301(a), (b), (c), and (f) provide as follows:

(a) For claims for injuries suffered on or after June 24, 1996, if a specific job vacancy exists within the usual employment area within this Commonwealth with the liable employer, which the employee is capable of performing, the employer shall offer that job to the employee prior to seeking a modification or suspension of benefits based on earning power.
(b) The employer's obligation to offer a specific job vacancy to the employee commences when the insurer provides the notice to the employee required by section 306(b)(3) of the act (77 P.S. § 512(b)(3)) and shall continue for 30 days or until the filing of a Petition for Modification or Sus-

employer seeking modification based on a labor market survey to show lack of in-house positions within a specific time frame.

In *Burrell*, this Court affirmed a modification of benefits based on surveillance showing the claimant working at a new job and on an expert's opinion as to the pay rates for the work he was performing. Rejecting the claimant's argument that the employer was required to first prove that it had no positions available, this Court, speaking through your current author, stated:

> Neither the express language of Section 306(b)(2) nor the cases decided under it require proof of the absence of specific jobs with employer as a prerequisite to expert testimony of "earning power." While the statute requires an employer to offer an available position if one exists, it does not require employer to prove the non-existence of such a position. Nor does the statute preclude a claimant from proving the existence of such a position as a defense to modification.
>
> However, we need not decide whether existence of a specific, available position with an employer is part of its burden in other modification circumstances. Rather, *we hold that where a claimant unilaterally demonstrates residual productive skill, an employer need not address existence of positions it may have as part of its case-in-chief.* As previously mentioned, a claimant is always free to inquire into this area as a defense to modification.

*Burrell*, 849 A.2d at 1287 (emphasis added).

As can be seen from the language quoted above, this Court did not relieve all modification-seeking employers from proving the lack of suitable positions before they may rely on expert testimony of earning power. Rather, we held that where a claimant obtains other employment, an employer need not address available positions it has as part of its case-in-chief.

This case involves a different factual situation. After Employer submitted its evidence, Claimant offered evidence of a suitable position available with Employer. In particular, she testified that after she was terminated from her clerical position with the Board of Elections, another person was hired by Employer to replace her. This testimony was not contradicted. This testimony raises the defense that the posi-

---

pension, whichever is longer. When an insurer files a Petition for Modification or Suspension which is not based upon a change in medical condition, the employer's obligation to offer a specific job vacancy commences at least 30 days prior to the filing of the petition.

(c) The employer's duty under subsections (a) and (b) may be satisfied if the employer demonstrates facts which may include the following:

(1) The employee was notified of a job vacancy and failed to respond.

(2) A specific job vacancy was offered to the employee, which the employee refused.

(3) The employer offered a modified job to the employee, which the employee refused.

(4) No job vacancy exists within the usual employment area.

* * * *

(f) If the employer has presented evidence that no job vacancy exists, the employee may rebut the employer's evidence by demonstrating facts which may include the following:

(1) During the period in which the employer has or had a duty to offer a specific job, the employer is or was actively recruiting for a specific job vacancy that the employee is capable of performing.

(2) During the period in which the employer has or had a duty to offer a specific job, the employer posted or announced the existence of a specific job vacancy, that the employee is capable of performing, which the employer intends to fill.

tion Claimant was actually performing was available for her continuing employment at the time she was terminated.

Section 306(b)(2) of the Act speaks in mandatory language on this point: "If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe." Recognizing that the Act does not address presentation of evidence, we are mindful that the burden of proof may be placed on a party who must prove existence of a fact rather than on a party who must prove its non-existence. *Barrett v. Otis Elevator*, 431 Pa. 446, 246 A.2d 668 (1969); *see In re Property Along Pine Road in Earl Tp.*, 743 A.2d 990 (Pa.Cmwlth.1999), *appeal denied* 563 Pa. 668, 759 A.2d 389 (2000).

However, where, as here, the question of an available, suitable job with the employer is raised with evidence, the employer ignores the question at its peril. As with all other elements necessary to succeed in a modification petition, once the issue is raised by evidence of a possible opening with employer, the employer has the burden of proof. Consistent with the plain language of the Act, once the issue is raised with evidence, satisfaction of this element of proof is a prerequisite to employer's reliance on expert testimony of earning power.

In addition, without specifying the order in which evidence is produced, the regulations expand on the type of evidence by a claimant which may prevail on the issue of available employment with an employer. The time period in question starts with the notice of ability to return to work and continues until the filing of a petition for modification. 34 Pa.Code § 123.301(b). A claimant may prove that "[d]uring the period in which the employer ... had a duty to offer a specific job, the employer ... announced the existence of a specific job vacancy, that the [claimant] is capable of

performing, which the employer intends to fill." 34 Pa.Code § 123.301(f)(2).

Consistent with the regulations referenced above, Claimant offered evidence that between the time of the notice of ability to return to work in November, 2002, and the filing of the petition for modification in July, 2003, a position with Employer that Claimant was capable of performing was announced and filled. The position was the clerical position with the Board of Elections that Claimant performed for 10 months. *See* R.R. at 52a–53a, 65a, 68a.

In this case, Rehabilitation Counselor, who testified by deposition, did not address the issue. To the contrary, he testified that he did not discuss available positions with Employer. The only evidence Employer submitted on this point was the termination letter admitted during Rehabilitation Counselor's testimony but only briefly mentioned. The termination letter informed Claimant that "[Employer] has no provision for a permanent light duty position...." Dep. of Charles Grande at Ex. 1. This letter was written before Claimant's employment ended and before another person was hired to replace her; nevertheless, the WCJ accepted this evidence.

Section 422(a) of the Act, 77 P.S. § 834, contains the "reasoned decision" requirement and states in relevant part, with emphasis added:

All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and

state the reasons for accepting it in conformity with this section. *When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection.* The adjudication shall provide the basis for meaningful appellate review.

Contrary to this statutory direction, the WCJ here did not give any reason for rejecting Claimant's evidence that there was suitable employment available with Employer. In fact, the WCJ did not even reference this uncontroverted, competent evidence. While the WCJ is free to accept evidence in the face of conflicting evidence, he must explain why he does so. The failure to do so here precludes effective appellate review.

Accordingly, we vacate the Board's order and remand, with direction for further remand to the WCJ. The WCJ shall address the conflict in evidence on suitable work available with Employer and shall address proof of residual productive skill.[6]

## ORDER

**AND NOW,** this 5th day of February, 2008, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is **VACATED.** The case is **REMANDED** to the Board with instruction for further **REMAND** to the Workers' Compensation Judge for the limited purpose of issuing a decision consistent with the foregoing opinion. The record shall not be reopened for additional evidence.

Jurisdiction is relinquished.

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the majority's disposition of this matter. Section 306(b)(2) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(2), as added by Section 4 of the Act of June 24, 1996, P.L. 350 (Act 57), includes the provision at issue here: "If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe." The majority is correct

---

**6.** The majority declines to reach the result embraced in the dissenting opinion for two reasons. First, the dissenting opinion does not sufficiently address the WCJ's finding of fact that Employer proved no permanent light-duty position was available to Claimant, as expressly stated in the termination letter. It is for the WCJ, and not this Court, to determine the facts and all reasonable inferences flowing from them. *Lehigh County Vo-Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe),* 539 Pa. 322, 652 A.2d 797 (1995). This Court must review the record in a light most favorable to the party prevailing before the fact-finder. *3D Trucking Co., Inc. v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l),* 921 A.2d 1281 (Pa.Cmwlth.2007).

Second, the majority does not sufficiently resolve the Claimant's admissions that she has residual productive skill, as demonstrated by her accepted testimony of obtaining other employment. It was the claimant's unilateral demonstration of residual productive skill in *Burrell* that supported both the procedural aspect of the decision (employer relieved of proving absence of positions during case-in-chief) and the result (modification granted). Similarly, the Claimant's admissions of residual productive skill here support both the procedural aspect of the majority's opinion (employer relieved of proving absence of position during case-in-chief but not relieved of ultimate burden of proof where issue raised by evidence) and the result (remand to the fact finder).

that Section 306(b)(2) speaks in mandatory language on this point. Further, I agree with the majority's acknowledgement that the decision in *Burrell v. Workers' Compensation Appeal Board (Philadelphia Gas Works)*, 849 A.2d 1282 (Pa.Cmwlth. 2004), does not stand for the general proposition for which it has been cited by Employer Pike County, namely that Section 306(b)(2) of the Act does not require an employer seeking modification to prove the nonexistence of an available position that a claimant is capable of performing.

Section 306(b)(2) of the Act provides the definition "Earning power," which since the adoption of Act 57 permits a determination of work that a claimant can perform to be based on expert opinion evidence that includes job listings with agencies of the department, private job placement agencies and advertisements in a usual employment area, in contrast with the former requirement under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), of proof of actual referrals to then-open jobs within the claimant's physical and vocational limitations. Act 57 at the same time added the requirement that an employer offer a job if it has available one that the claimant can perform. As Rosenberg notes, the Court stated in *South Hills Health Sys. v. Workers' Compensation Appeal Board (Kiefer)*, 806 A.2d 962, 966 (Pa.Cmwlth.2002): "Thus, in order to prevail in seeking a modification of benefits, an employer must either: (1) offer to a claimant a specific job that is available, which the claimant is capable of performing, or (2) establish 'earning power' through expert opinion evidence...."

In *Burrell* an employer filed a petition to modify a claimant's benefits based upon surveillance that showed him engaged in work activity in his mother's shoe shine shop. The Court observed the following:

Neither the express language of Section 306(b)(2) nor the cases decided under it require proof of the absence of specific jobs with employer as a prerequisite to expert testimony of "earning power." While the statute requires an employer to offer an available position if one exists, it does not require employer to prove the non-existence of such a position. Nor does the statute preclude a claimant from proving the existence of such a position as a defense to modification.

However, we need not decide whether existence of a specific, available position with an employer is part of its burden in other modification circumstances. *Rather, we hold that where a claimant unilaterally demonstrates residual productive skill, an employer need not address existence of positions it may have as part of its case-in-chief.* As previously mentioned, a claimant is always free to inquire into this area as a defense to modification.

*Burrell*, 849 A.2d at 1287 (emphasis added). The majority correctly states that the above-quoted text from *Burrell* did not relieve all modification-seeking employers from proving a lack of suitable positions before they rely upon expert testimony on earning power; rather, the Court held only that the employer need not address available positions as part of its case-in-chief where a claimant obtains other employment. Although *Burrell* is not determinative, the reasoning of the quoted text strongly indicates that in other circumstances, in particular where an employer seeks modification based upon expert testimony on earning power, the employer must prove the nonexistence of an available position as part of its case-in-chief to show compliance with the mandatory requirement of Section 306(b)(2).

There is abundant support for the conclusion that in general Section 306(b)(2) requires an employer that relies on expert testimony to establish earning power to establish the absence of a suitable position with the employer as part of its case-in-chief. First, such a procedure is eminently sensible. In the seminal workers' compensation case of *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968), the Supreme Court noted that when the existence or nonexistence of a fact can be established by one party much more easily than by the other party, the burden may be placed on the party who can discharge it most easily. Whether an employer has a suitable position available is a matter peculiarly within that employer's knowledge and is not likely to be within the claimant's knowledge. Whatever inkling an employee might have concerning possible positions cannot compare to the comprehensive knowledge of the employer of its own operations. Enforcement of the mandatory duty to offer a suitable job if one is available plainly should not be made to turn on the chance that an individual employee, perhaps one among hundreds or more, somehow gains knowledge of a suitable position somewhere in the employer's business.

An employer's burden in this regard is not an onerous one. In *Allied Products & Services v. Workers' Compensation Appeal Board (Click)*, 823 A.2d 284 (Pa.Cmwlth. 2003), where the employer submitted evidence of earning power through expert testimony, the Court observed that the employer's chief executive officer testified that the employer had no available positions within the claimant's restrictions. In *Edwards v. Workers' Compensation Appeal Board (MPW Indus. Servs.)*, 858 A.2d 648 (Pa.Cmwlth.2004), where expert vocational testimony was considered, the employer's area manager testified that the employer did not have work available within the claimant's limitations. In general, some employer representative with requisite authority must testify under oath and subject to cross-examination that no suitable positions existed within the applicable period.

Equally as important, the Department of Labor and Industry, Bureau of Workers' Compensation has provided a definitive administrative interpretation of Section 306(b)(2) in its adoption of 34 Pa.Code § 123.301, relating to employer job offer obligation, which provides in part as quoted by the majority:

(a) For claims for injuries suffered on or after June 24, 1996, if a specific job vacancy exists within the usual employment area within this Commonwealth with the liable employer, which the employee is capable of performing, the employer shall offer that job to the employee prior to seeking a modification or suspension of benefits based on earning power.

(b) The employer's obligation to offer a specific job vacancy to the employee commences when the insurer provides the notice to the employee required by section 306(b)(3) of the act . . . and shall continue for 30 days or until the filing of a Petition for Modification or Suspension, whichever is longer . . . .

(c) The employer's duty under subsections (a) and (b) may be satisfied if the employer demonstrates facts which may include the following:

(1) The employee was notified of a job vacancy and failed to respond.

(2) A specific job vacancy was offered to the employee, which the employee refused.

(3) The employer offered a modified job to the employee, which the employee refused.

(4) No job vacancy exists within the usual employment area.

. . . .

(f) If the employer has presented evidence that no job vacancy exists, the employee may rebut the employer's evidence by demonstrating facts which may include the following:

(1) During the period in which the employer has or had a duty to offer a specific job, the employer is or was actively recruiting for a specific job vacancy that the employee is capable of performing.

(2) During the period in which the employer has or had a duty to offer a specific job, the employer posted or announced the existence of a specific job vacancy, that the employee is capable of performing, which the employer intends to fill.

Subsection (a) restates the mandatory statutory duty for an employer to offer a job a claimant is capable of performing if such a vacancy exists before seeking modification or suspension based upon earning power. Subsection (b), which the majority accepts as controlling, establishes the period in which such an offer must be made, *i.e.*, from the employer's provision of notice to the employee of ability to return to work under Section 306(b)(3), 77 P.S. § 512(3), for thirty days or until the filing of the petition for modification, whichever is longer. In this case that period runs from November 22, 2002 until July 16, 2003. Subsection (c) provides that the employer may fulfill its obligation by proving either that it notified a claimant of a job or offered a job but the claimant failed to respond or refused, or that "(4) [n]o job vacancy exists within the usual employment area." Subsection (f) prescribes the manner for the claimant to rebut if the employer has presented evidence that no job vacancy exists.

There is no ambiguity in this statutory/regulatory scheme: an employer must provide notice of or an offer of a suitable job that it has available or it must prove that no vacancy exists. The regulation makes express what is clearly implied by Section 306(b)(2). It is well settled that an administrative agency's interpretation of its enabling statute is entitled to great weight and will not be overturned unless it is clearly erroneous. *Eagle Environmental II, L.P. v. Department of Environmental Protection*, 584 Pa. 494, 884 A.2d 867 (2005). Section 306(b)(2) as interpreted by 34 Pa.Code § 123.301 provides a procedure that is straightforward and logical. It does not provide for a game in which an employer may conceal the existence of a suitable job and need offer evidence only if the claimant first offers evidence of its existence.

Although the majority accepts that the duty to offer a claimant an existing suitable job is mandatory and that *Burrell* did not relieve all modification-seeking employers from proving lack of a suitable job before presenting evidence of earning power, it nevertheless concludes that the circumstances of the present case require vacating and remanding rather than reversal. I cannot agree. The majority accepts that the period during which an offer of an available job was required to be made ran from November 22, 2002 to July 16, 2003. The only evidence that Employer offered relating to job availability was a letter from the county commissioners to Rosenberg dated December 3, 2002, stating that the county had no provision for a "permanent" light-duty position and that Rosenberg's employment therefore would be terminated effective January 17, 2003. While this letter presumably reflects the commissioners' view in December 2002, it plainly is not adequate evidence to establish that no suitable position became available be-

fore July 16, 2003. As noted by the majority, the Rehabilitation Counselor testified that he did not discuss available positions with the employer.

The majority concludes that once the issue of the availability of a suitable job with the employer is raised by evidence of a possible opening with the employer, *i.e.*, raised by the claimant, then the employer has the burden of proof, but Section 306(b)(2) and 34 Pa.Code § 123.301 contain no such requirement. To the contrary, the burden is on employer to establish the absence of a suitable job before it may present evidence of earning power. Because this case includes testimony by Rosenberg that someone was hired to replace her in the elections board position, however, the majority quotes 34 Pa.Code § 123.301(f)(2) to the effect that a claimant may prove that "[d]uring the period in which the employer has or had a duty to offer a specific job, the employer posted or announced the existence of a specific job vacancy, that the employee is capable of performing, which the employer intends to

fill." The majority overlooks the fact that this is a provision describing a rebuttal, and it comes into play only "[i]f the employer has presented evidence that no job vacancy exists. . . ."

Employer here simply failed to meet its burden to present sufficient evidence as part of its case-in-chief that no suitable job existed with Employer during the applicable period. Because Employer had a full opportunity to meet its burden in this modification proceeding and failed to do so, the order of the Board affirming the WCJ's grant of a modification should be reversed.[1]

Judges PELLEGRINI and FRIEDMAN join in this dissent.

---

**1.** The majority opinion cites a distinct principle stated in *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968), but I remain convinced that the proposition that applies here is that the burden to prove the existence or nonexistence of a fact may be placed on the party who can establish it much more easily. I find the majority's citation to *In re Property along Pine Road in Earl Township*, 743 A.2d 990 (Pa.Cmwlth.1999), to be puzzling. The only evidentiary aspect of that case is the statement at the end that it is settled beyond dispute in Pennsylvania that the party defending in an action is not required to prove a negative in order to prevail. In this case, however, Employer is the moving party, seeking modification, not the "defendant." Under Section 306(b)(2) of the Act and 34 Pa.Code § 123.301 there is a mandatory requirement for Employer to offer a suitable job if it has one available before seeking modification based on earning power. Employer must show proof of *compliance*, either through *proof* of an offer or through proof that no suitable job was available, as the

regulation expressly provides. By offering proof of earning power, Employer is tacitly averring that it complied, and there is no reason not to require proof.

Regarding arguments in Footnote 6 of the majority opinion, I do not agree with the implication that the WCJ made a finding that no suitable work was available before July 16, 2003. The WCJ found that no suitable work was available effective January 17, 2003, based on the letter from the commissioners, but the dissenting opinion does address this question by pointing out that the letter simply is inadequate to answer the question: "Had any suitable position become available by July 16, 2003?" The majority's mention of Rosenberg's demonstration of residual skill shown through her part-time employment is at odds with Employer's theory of the case, which was to show earning power through a labor market survey. The part-time employment described all occurred in 2004, well after the period for Employer's mandatory compliance. This is not a case such as *Burrell* where the employer relied upon a demonstration of

earning power through proof of new employ-ment, and I disagree with the statement that admissions of residual productive skill sup-port the procedural aspect of relieving Em-ployer of the requirement of proving absence of a suitable job as part of its case-in-chief.